# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

The cellular telephones assigned cell number **414-865-3055**, whose service provider is T-Mobile, more fully described in Attachment A

)
)
)
)
)
)

Case No. 19-950 M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery), and 924(c) (use of a firearm during a crime of violence), and Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm).
The application is based on these facts: See attached affidavit.

☒ Delayed notice of __30__ days (give exact ending date if more than 30 days:_____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Matthew Gibson, FBI
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: November 8, 2019

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Gibson, being first duly sworn, hereby depose and state as follows:

### **INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **414-865-3055** (the "Target Cell Phone"), whose service provider is T-Mohile, a wireless telephone service provider headquartered in Bellevue, WA. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I have over 28 years of experience as a law enforcement officer and am currently assigned to the Milwaukee FBI Violent Crime Task Force as a Deputized Federal Task Force Officer. I was a Special Agent with the Federal Bureau of Investigation for over 23 years and have been an Investigator with the Milwaukee County District Attorney's Office since June of 2015. I have participated in numerous complex narcotics, money laundering, violent crime, armed bank robbery, and armed commercial robbery investigations in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and other related offenses. I have employed a wide variety of investigative techniques in these and other investigations, including but not limited to, the use of informants, wiretaps, cooperating defendants, recorded communications, search warrants, surveillance, interrogations, public records, DNA collection, and traffic stops. I have also received formal training regarding the same. As a Federal Task Force Officer, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the investigation to date, there is probable cause that Maurice Tolbert and Richard Tolbert conspired to commit and committed the 10/2/2019 armed robbery of the Sprint, 4550 South 27th Street, Milwaukee, WI, the 10/7/2019 armed robbery of the Sprint, 1316 South 1st Street, Milwaukee, WI, and the 10/29/2019 armed robbery of the T-Mobile, 1528 South 108th Street, West Allis, WI, all in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery), and 924(c) (use of a firearm during a crime of violence), and Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm). There is also probable cause to believe that the location information described in Attachment B will enable law enforcement to recover evidence of these criminal violations.

## *PROBABLE CAUSE*

5. On October 2, 2019, in the morning, an employee at the AT&T store located at 3543 South 27th Street, Milwaukee, WI, reported to the Milwaukee Police Department that at about 10:45 a.m. he had noticed a blue 4 door Hyundai Elantra backed in by a dumpster near the store. The car was occupied by two individuals who ducked down as he drove past them. Once inside the store the employee saw a black male approach the front door and attempt to open it. The employee stated that since a previous armed robbery on 9/20/2019 they keep the front door locked

2

and only open it for customers. The subject then turned and walked away in the direction of the Hyundai. The employee left the store and drove thru the parking lot. He saw the subject getting into the passenger door of the Hyundai. The employee took a photograph of the blue Hyundai with his cell phone as the car left the parking lot.

6.  Based upon the witness description and the recovered surveillance footage, the driver was a black male, wearing black clothing and weighing approximately 240 pounds. The passenger was a black male, early 30's, 5'8" to 5'9" tall, approximately 200 pounds, dark complexion, wearing a white baseball cap, zippered gray hooded sweatshirt with "Everlast" across the chest, bleached/distressed style blue jeans, black gloves, and a black sunglasses.

7.  On October 2, 2019, at approximately 7:49 p.m., two masked subjects entered the Sprint store located at 4550 South 27th Street, Milwaukee, WI. Subject #1 demanded an employee go to the back room of the store. Subject #2, armed with a black handgun, threatened the victims that if they moved he would shoot them. Subject #1 told Subject #2 to have the other victims moved into the back room. The subjects demanded the employee open the safe where the cellular telephones were kept. Once the safe was open, the cellular phones were placed into black garbage bags. The subjects fled. Sprint was a business involved in interstate commerce at the time of the robbery.

8.  Based upon witnesses' descriptions and the recovered surveillance footage, Subject #1 was a black male, approximately 30 years of age, approximately 5'7" tall, approximately 365 pounds, heavy build, wearing a black hooded sweatshirt, gray pants, black shoes, gloves, and a black face mask. Subject #2 was described as a black male, approximately 25 years of age, approximately 5'10" tall, approximately 170 pounds, medium build, wearing a zippered gray hooded sweatshirt with "Everlast" across the chest, bleached/distressed style blue jeans, gloves,

3

and a black mask. The firearm, which was brandished during the robbery, was described as a black semi-automatic handgun.

9.     Law enforcement collected video from the Sprint store and conducted a canvas in the area, which resulted in several surveillance videos being recovered and reviewed. These videos captured the subjects exiting and fleeing in a blue Hyundai Elantra.

10.     On October 7, 2019, at approximately 12:18 p.m., an armed and masked subject entered the Sprint store located at 1316 South 1st Street, in Milwaukee, Wisconsin. The subject was armed with a handgun. The subject demanded phones to be placed into the bag he produced. The subject ordered them to hurry or he would shoot. After the phones were placed into the bag, the subject fled and was observed entering a blue hatchback sedan parked in front of the store. Over 20 devices were taken in the robbery. Sprint was a business involved in interstate commerce at the time of the robbery.

11.     Based upon witnesses' descriptions and the recovered surveillance footage, the subject is described as a black male, approximately 230 pounds, heavy build, wearing a black ski mask, black hooded sweatshirt, gray jogging pants and gloves. The firearm, which was brandished during the robbery, was described as a black semi-automatic handgun.

12.     Law enforcement collected video from the Sprint store and conducted a canvas in the area, which resulted in several surveillance videos being recovered and reviewed. These videos captured a blue Nissan Versa parked in the area before the robbery, from which the subject exited. After the robbery, the subject returned to the vehicle and put the black garbage bag in the trunk. The subject then drove away. The rear of the Versa had the make and model identifiers covered.

13.     On October 29, 2019, at approximately 11:34 a.m., two masked subjects entered the T-Mobile, 1528 South 108th Street, West Allis, WI. One subject was armed with a silver and

4

black handgun. The victims were forced into a back room of the store and told to lie down. A store employee was told to open the safe containing cell phones and another which contained cash. The phones were placed into black garbage bags. The cash, consisting of two $100 bills, two $50 bills, and rolls of quarters, were taken. The subjects then fled the store. T-Mobile was a business involved in interstate commerce at the time of the robbery.

14.     Based upon witnesses' descriptions and the recovered surveillance footage, Subject #1 was described as a black male, possibly in his 30s, 5'8" to 5'9" tall, approximately 250 pounds, wearing a gray ski mask, dark navy blue puffy jacket, and gloves. Subject #2 was described as a black male, possibly in his 30s, approximately 6'0" tall, approximately 200 pounds, wearing a gray mask, dark clothing, and gloves. The firearm, which was brandished during the robbery, was described as a silver and black semi-automatic handgun.

15.     Responding squads tracked the subject vehicle, identified as a blue Hyundai Elantra, which fled at a high rate of speed when officers attempted to stop the vehicle. As squads pursued the Elantra, it crashed in the alley in the 1300 block of South 37th Street, Milwaukee, WI. Richard Tolbert exited the front passenger door and attempted to flee on foot but had a physical injury and was taken into custody. Maurice Tolbert was taken into custody hiding in some foliage at the rear of 1313 South 35th Street, after a perimeter was established and officers conducted a search of the area. The key fob to the Elantra was recovered where he was hiding.

16.     The make and model emblems of the Elantra were covered with black electrical tape and a Wisconsin license plate which was subsequently determined to have been reported as stolen was attached over the Illinois plate registered to the Elantra, AZ-31096.

17.     Along the flight path of the Elantra, officers recovered a loaded Taurus G2C 9mm silver and black handgun, serial number TMD66339.

5

18.     A Wisconsin State Search Warrant was executed on the Elantra. The items stolen from the T-Mobile were recovered in the trunk. Clothing, masks, and gloves consistent with the witness descriptions and surveillance video in the T-Mobile robbery were located. Additionally, a black mask consistent with those worn in the two Sprint robberies was located. No personal cell phones were recovered.

19.     A check of the Milwaukee County Criminal Justice Facility records for Maurice Tolbert reflect that Angel Price, 1820 West Wells, Milwaukee, WI, phone **414-865-3055** was listed as his emergency contact.

20.     On November 1, 2019, at approximately 12:50 p.m., Maurice Tolbert called phone number **414-865-3055** from custody. During the recorded call, Maurice Tolbert identified the female as Angel. He further provided her with the passcode to his phone, 329726, and information associated with his Apple ID (Grindfamily1@gmail.com, lovelifeloyalty12). Based on that phone conversation, it is reasonable to assume that Angel Price is in possession of Maurice Tolbert's phone.

21.     Based on my training and experience, I know that evidence of armed robberies is commonly found on the cellular phones belonging to the armed robber(s). This evidence often includes web-based searches for cellular telephone stores, contacts with individuals who purchased the stolen devices after the robberies, price lists for the stolen phones, communication with co-conspirators, and other similar evidence. As a result, law enforcement seeks to locate and identify Maurice Tolbert's cellular phone.

22.     Subsequent investigation has identified the Taurus G2C 9mm pistol bearing serial number TMD66339 as being purchased by Angel Marie Price, black female, 5/31/1991, 1104 South Layton Bl., Milwaukee, WI on 10/6/2019 from Dunham's Discount Sports, 2550 South

6

108th Street, West Allis, WI. Maurice Tolbert is a convicted felon, and is therefore not lawfully allowed to purchase a firearm himself. Based on that information, there is probable cause to believe that Angel Price may have information about the firearm used in the above-described armed robberies, in addition to Maurice Tolbert's personal cellular phone.

23. Law enforcement's efforts to locate Angel Price thusfar have been unsuccessful. Law enforcement seeks this warrant in order to locate Angel Price and obtain from her evidence about the aforementioned armed robberies.

24. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

7

25.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phone.

## **AUTHORIZATION REQUEST**

26.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

27.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

28.     I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile for a time period of 45 days from the date the warrant is signed. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B

8

unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

29.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **414-865-3055** (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered in Bellevue, WA.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of T-Mobile.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).